please the court good morning there are two matters before your honor this morning for the court this morning I'd like to address the second one first I understand that this court reviews a record that it looks to facts evidence and then applies the law at nearly every turn of this argument the government has suggested that we failed to present evidence for the court to examine to understand whether there was a application of law in one area where I've submitted two memorandums from the Department of Justice to the court as exhibits demonstrating that there was indeed a sort of a policy that was adopted in 2013 that says we're going to sort of examine these laboratories of prosecutions in these cases based upon a factor I set those out in the brief it seems to me that that this court can examine the realities of the marijuana issue in front of the United States there are now two states in this circuit that allow the production of medicinal marijuana Missouri being the most recent that's that's step to this and is moving towards an economy that allows for this product to be manufactured attributed and consumed it is a prohibition of the 14th amendment that we apply the laws in different ways we're not allowed to do that so to say to one American citizen you are able to profit from the production of marijuana while we incarcerate other people antagonistic to and repugnant to but all right so we did have recent voting in Missouri your argument though was that the right to farm act decriminalized it and I you're gonna have to show me where that happened because I didn't see that in there I don't think anybody else in the world saw that in that act and I was reading the plain language of that amendment your honor that that has since been presented to Missouri Supreme Court and they've declared that their analysis that wasn't really the crux of the argument for mr. white even at the district level it was there is a policy by the Department of Justice but but that policy is apparently that you're talking about the coal memorandum sir I think it would be good if you stayed near the end of the microphone that policy as I understand it is the Department of Justice is using its discretion not to prosecute in states where it has been decriminalized it hasn't been decriminalized in Missouri that is absolutely correct but then do you have an argument yes the argument is is that the Colorado citizen is a United States citizen for applying federal law in Colorado and saying that we we won't prosecute those people are giving the but they're not similarly situated because the Colorado citizen lives in a state where it's been decriminalized and the Missouri citizen does not live in a state where it's been decriminalized and I understand that okay and I guess what I would suggest to you is is that there's not really a constitutional argument to present to the court in terms of stare decisis thing this is how we would examine this kind of issue I've researched this and I found no circumstance in American history where federal government said we're going to look in a regional perspective of saying we'll prosecute people under certain circumstances here and I recognize that there's still some prosecutions that occur in Colorado it went from under the guideline for the commission down from like 17 percent to 3 percent after this memorandum so you still have that but it is a United States attorney or an assistant United States attorney who's making some determination that says we're going to to prosecute this selection of people and not this election so you see that the argument is sort of premised upon a selective prosecution discussion but that is a very limited examination and say was there was there based upon race religion or some other discriminatory practice wasn't wasn't part of it though two of the Cole memo is is so you talk about decriminalization but that also comes along with it some regulations so so the under a regulatory scheme where it is monitored and they have to follow certain rules and regulations and so that it put presumably would be less likely to cause some of the problems that the Cole memo was trying to address which was sort of the the violence and the other sort of untoward events and inactivity that's attached to it what about that just that those distinctions I don't believe that the Controlled Substance Act engages in that type of analysis and that's that's sort of where I stop is we're applying chapter 21 title 21 to this analysis and it's the same in Colorado or Washington or Arkansas as it is Missouri but you're looking at the prosecutorial discretion as to which ones there's no way that the prosecution is going to get every every person doing this right so so there's some sort of discretion isn't that sort of where where we're looking here the decision-making process I'm asking the court to more examine the notion that if one one person in the United States is permitted to engage in this behavior and engage in this conduct and even profit from it then it should not be the case that we incarcerate other people or the similar conduct that's just a variation that's the variation of the one more speeder over the hill you got me but you didn't get the other guys isn't it I don't I don't know that we're saying it as a matter of policy that we're applying that you may have one driver that you in one car and another driver in the next car may becomes a matter of I can't stop everybody but in this situation we're saying to an entire state where the voters have adopted a we're not going to apply federal law and it just seems to me to be a bridge too far to say it's still okay that we're we're permitting attorneys to profit coca-cola now has a marijuana infused drink we're you know we're doing something in Missouri and a 77 year old man is being incarcerated for similar that point in time when he was doing it but it was being permitted in other parts of the United States that's my point as it relates to the first argument the I think that what I would ask the court to focus on in the Jardines discussion is these officers went to this this location twice I'm not that the gate was open or closed or engaging in that that discussion what I'm suggesting is is at the moment that they left and went and got other law enforcement officers you're not you're not challenging the first visit at all right sir okay I I think there's there's some factual determinations in there that the defendant would certainly disagree with but but this court has addressed that and judgingly does it well but but I don't think that this has been really discussed in terms of the second trip and what the impetus of that trip was and that was to to gather information to prosecute this individual the first two officers when they left the scene believed entirely that there was a marijuana grow operation there they they had noted the camera they had noted the the the smell and all of that yes let me ask you about the the second visit is there any evidence in the record one way or the other whether on a second visit the officers entered the curtilage of the property and and I think that is probably the crux of this case your honor and I've provided some exhibits that were submitted to the district court that demonstrate the seclusion of this home it sets well off the road it's surrounded by trees there is a private lane that are surrounded by trees they the officers acknowledged the gate say it's not open but in any event this is in a very remote area of the county there's not a lot of population there what I've suggested to your to the court is to treat this as though it's a row of townhouses similar to Jardines is not really the case where people live there those types of signs and entry upon to their property is oftentimes met with a firearm in the officers parked when they got out to smell from marijuana on the second visit there's testimony about this and the road is a circle drive and it leads around to the back of the house there's a front door the officers testified they had not seen the front door and that they followed the road to the back again I I'm my suggestion is is that that might have sufficed as a reason for entry on the first entry but it's not sufficient on the second entry and it's certainly not for the purpose of why they were coming there I've suggested to the court that that knock and talk is unconstitutional I think that there is a debate between judge Alito and judge Scalia within the opinion of Jardines I think this type of application is sort of the poster child for why this is a for a specific reason whether a knock and talk is a you know a quiet knock hey may we we talked to you about you know something that we've heard I don't I don't really think that's what occurs as the law stands right now though knock and talk is constitutional isn't it okay you versus King and sort of our okay versus Jardines sort of reiterates that all right and what impact if any does our Bearden case have on your argument here today I don't think it does your Bearden was not arguing anything about the the propriety of the second return his argument was is that there wasn't sufficient evidence or he was challenging the district courts conclusion that the gate was open and and that the entry was so your view was that Bearden was just challenging the first entry not the second the return to the property yes ma'am I think a review of that opinion that does not address in any way whether or not could talk is the second return is constitutional under the circumstances the officers returned and I've set this out in kind of a I've applied some of the language of Jardines and I've put in brackets part of the cases here I'm not suggesting that the you know the officers have the prowess of a drug dog similar to the way they did in Jardines but certainly these two county police officers returned to the with law enforcement who are are specialized task force officers they brought them for a reason you had five officers and three vehicles two vehicles staged north and south of the driveway and then the rest of the officers entered and then they instructed the other officers come on in we're going to apply for a warrant but back to judge Graza's question did they really enter the cartilage because if I can finish if I as I understand Jardines they actually entered a porch type area sort of entry into a closed area and here I think we just have going up and perhaps and knocking on the door and that I think is again the crux and maybe I didn't sufficiently answer that I think it's very important Jardines was a row of townhouses where they walked up on the porch and they allowed a dog to come on and sniff around and the dog alerted and then they went and got a search warrant based upon that alert here you have officers entering what was amounts to more than a hundred yards off of the road surrounded by trees there is a basketball goal and flower beds and a parking area in the in the back of the house and then there is a Oh probably about a 50-foot spot in between the outbuilding where the marijuana was and the house flower beds were kept up and other things around that area there was a photograph involving a barbecue grill and some other things that were showing that that he spent his time in this backyard council assuming that the government has a Jardines problem with the second search I'd like to talk to you about the independent source doctrine and particularly the application the warrant application affidavits and what do they show about probable cause if the information gathered in the second visit is excluded from that application well the warrant was applied for and obtained prior to them entering the premise that the garage or the shop in any way they had detained mr. Bearden who was on a four-wheeler coming in from the woods and so there they saw him based upon their presence there so I think it was based on the first everything was based upon the first their observations on the first thing but then they brought back these other officers see what their observations were whether they smelled green marijuana and and I believe everything from the second entry if it is painted but based upon procuring the search warrant based upon that how I'm sorry was it was the search warrant based on what they learned from the second visit or the first visit I would say it's probably both the they're talking about the smell both ends mr. Coatney your time's about to expire would you like to reserve a little I would thank you sir very well mr. Casey you're doing a twofer today huh I am your honor and may it please the court I'll uh begin with the search issue first and I think to answer your question from earlier judge Kelly I think the Bearden case decides this issue it was the same search it was the same facts and I think the facts of and laws found in that search were proper you properly applied this was simply a knock and talk there's no change in the law that has been a knock and talk an unconstitutional investigative procedure and that's what occurred in this case so I think this I think the entry onto his property was fully constitutional and so there's no reason to suppress the warrant that came as a result do you what how do you read Bearden here opposing counsel says Bearden just addressed the first entry do you think it also addressed the second entry absolutely your honor what the warrant is based on is the affiant of the warrant is one of the officers who entered the property on the second entry and so just by reaching you know the warrant issue Bearden had to for me why were what's the justification for the second entry is there an implied license or what is the basis for the second search it was to go knock on the guy's door and talk to him I mean that was what they the officers all stated during the suppression hearing you had the first two officers Simpson and Maneka who go on to the property investigating a different but you know it's part of a different investigation they see some suspicious things they smell a suspicious odor they have to leave to go to court when they go to court they run into some other officers who are all testifying at a state court proceeding they say what they saw and they said hey well after we're done with court let's go back over and take a look would you say that a human drug unit is different than a canine unit in Jardines for purposes of that analysis absolutely your honor I mean the question in Jardines whether a search occurs but it's a very very narrow limited situation where a Jardine could even occur because entering you're walking up to a front door what you see in plain view or in this case in plain smell wouldn't it would would be outside the Fourth Amendment and so in this case the concerns about Jardine doing something that's sort of beyond the scope of the Fourth Amendment really isn't here because this is strictly a plain smell case the officers didn't they acknowledge that the whole purpose for their second visit was to smell for green marijuana well I don't think they put it in those terms your honor you know there but they certainly their purpose of the visit was to investigate I don't think it was you know just to go smell it was to go knock on the guys who or talk to him but they were investigating what the prior officers had said and as I understood the argument from the brief what's being asked what white is asking for in this case is an extension of the law such that knock and talk is no longer legal if an officer had a reason was to investigate and I see nothing in Jardine or any other precedent that would warrant that extension of the law does it make any difference even assuming that the gate was wide open on the second visit does it make any difference that there were no trespassing signs in plain view as shown by the photographs in evidence the officers didn't recall seeing it so I I think the record as found by found by the magistrate court adopted by the district court and actually in Bearden found not to be an erroneous by this court is that the officers didn't didn't see a gate didn't see a no trespassing sign and if there are no questions on that issue I would like to move them to the second issue and following up on one of the statements made by a council with regard to the right to farm amendment the Missouri Supreme Court has ruled that it does not extend to marijuana and that case is state be Shanklin and I can give the court the site or I can send a 28 J letter whatever would be appropriate it's 534 Southwest reporter third at page 240 so I think to the extent that that the argument was was premised on that right to farm I think it's it's been sort of definitively ruled in that case I think it's also important for the court to keep in mind that this seizure and this prosecution began in 2012 so while there are a lot of it's an issue about which you know there's been a lot of the country's been wrangling with since then in 2012 was really prior to either of the memos that the defendant raises in this case neither the coal memos had been even written it as of 2012 does that affect the analysis if it was in effect at the time of the prosecution decision well what I think the point is that the coal memos weren't even part of the not even at the time that yeah at the time this was a thousand plant grow operation and I think that would always be charged but probably not charged in Colorado if it was otherwise being grown for medical marijuana I think purposes well I think there's a lot to be unpacked from that your honor and I think if it was state authorized under appropriate license following proper conditions you know there's a lot of ifs they're here there's none of that this is strictly illegal grow Missouri didn't have a system of state licensing in place but if this was outside of any type of licensing and so you know even even in states where it's legal that licensing regime matters and you know they would prosecute or whatever is appropriate under their regulations regulates unlicensed grows and this is a completely illicit grow purpose was to sell the product on the black market and if there are no further questions that the government's happy to rest on his mr. Cote he will give you a minute yes sir thank you the what it's inescapable that there are American citizens who are being allowed to profit from manufacturing marijuana and there are still American citizens who are being incarcerated for it that again is repugnant to the 14th as it relates to Jardine well is it repugnant to federalism I mean don't we have some states that allow certain things in some states that don't and that's just the way it is it just seems to me your honor that we reduce it to the statement that the federal government is making choices prosecute some people and not others when I when it was reduced to that kind of fact I don't know that that's arguable it seems to me that that's going on in the United isn't that what happens in every US Attorney's Office every day certainly you know they set limits sometimes they got to have more than five grams of crack and sometimes you know even though it's illegal to have two grams you know they set limits right yes sir but it's a matter of policy or an entire region to receive that kind of benefit prior to any analysis being undertaken and seems to me to be unfair as it relates to Jardine's I'm suggesting to the court respectfully that knock-and-talk is unconstitutional we don't allow people to come to our house to berate us into coming in to search her but you'll you'll concede you probably have to go upstairs to win that argument right very well okay I think that may be the place to make it but the reality is is that these officers did return for a second trip that was a predominant portion of their of their application for the warrant Bearden did not address this with with for as far as I can tell and it just seems to me that the second trip being premised upon what all these other officers have observed and what they came in on the second so it was far beyond what what Jardine's allows very well thank you counsel the court appreciates your appearance and arguments today the case is submitted and will be decided in due course